# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# NORTHERN DIVISION AT KNOXVILLE

| | |
|---|---|
| SURETEC INSURANCE COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. |
| RUTLEDGE PIKE ELECTRIC COMPANY, LLC and JOSHUA KING | ) ) ) |
| Defendants. | ) ) ) |

## COMPLAINT FOR INDEMNITY AND OTHER RELIEF

Plaintiff SureTec Insurance Company ("SureTec" or "Company"), by and through counsel, states the following for its Complaint for Indemnity and Other Relief against Defendants Rutledge Pike Electric Company, LLC ("Rutledge") and Joshua King (Rutledge and Mr. King collectively, the "Indemnitors"):

### I.   PARTIES

1. SureTec is a Texas Domiciled Insurance Company with its principal place of business located at its headquarters in Houston, Texas, which is the location from which SureTec's high level officers direct, control, and coordinate SureTec's activities. Thus, SureTec is a citizen of the State of Texas for purposes of diversity jurisdiction.

2. Upon information belief, Rutledge is a Tennessee member-managed limited liability company (which has been administratively dissolved), whose members are citizens of the State of Tennessee. Thus, Rutledge is a citizen of the State of Tennessee for purposes of diversity jurisdiction.

3. Upon information belief, Joshua King is a citizen of the State of Tennessee.

## II. JURISDICTION AND VENUE

4. This Honorable Court possesses original jurisdiction over SureTec's Complaint for Indemnity and Other Relief pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the matter in controversy is between citizens of different states.

5. This Honorable Court possesses the power to declare the respective rights and other legal relations of SureTec and the Indemnitors as requested herein pursuant to 28 U.S.C. § 2201(a).

6. This Honorable Court possesses the authority to award the injunctive relief requested herein pursuant to Rule 65 of the Federal Rules of Civil Procedure

7. Venue is proper in the United States District Court for the Eastern District of Tennessee, Northern Division, pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 123(a)(1) because (1) Joshua King resides in the Eastern District of Tennessee, Northern Division and (2) a substantial part of the events or omissions giving rise to SureTec's claims occurred within the Eastern District of Tennessee, Northern Division.

## III. FACTUAL ALLEGATIONS

### The Indemnity Agreement

8. As a condition of SureTec's issuance of surety bonds on behalf of Rutledge, the Indemnitors, Garry King, and Hope King executed the General Agreement of Indemnity attached hereto as **Exhibit 1** (the "Indemnity Agreement") in favor of SureTec.

9. Garry King and Hope King (collectively, the "Bankrupt Indemnitors") have initiated a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of Tennessee bearing Case No. 3:16-bk-32746 (the "Bankruptcy Proceeding"). SureTec

intends to pursue its claims against the Bankrupt Indemnitors in the Bankruptcy Proceeding, and the Bankrupt Indemnitors are not necessary or indispensable parties in this action.

10. With respect to the Indemnitors' joint and several obligation to indemnify and save SureTec harmless from liability, loss, etc., Paragraph 2 of the Indemnity Agreement states:

> **The Indemnitors shall indemnify and save the Company harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which the Company may pay, suffer, or incur in consequence of having executed, delivered, or procured the execution of such bonds**, or any renewals or continuations thereof or substitute therefor, including, but not limited to, court costs, collection fees, mediation and facilitation fees and expenses, funds disbursement and escrow fees, fees and expenses of attorneys, accountants, adjusters, third party administrators, inspectors, experts, and consultants, whether on salary, employed by affiliates, third party administrators, or co-sureties, on retainer, in-house, or otherwise, and the expense of determining liability, or procuring, or attempting to procure, release from liability, or in bringing suit or claim to enforce the obligation of any of the Indemnitors under this Agreement. In the event the Company deems it necessary to respond to, make an investigation of, or settle, defend, or compromise a claim, demand or suit, the Indemnitors acknowledge and agree that all loss, cost, and expense attendant to such response, investigation, settlement, defense, and compromise, whether incurred internally or otherwise, and whether or not indemnitor has offered to defend Company, is included as an indemnified expense and shall be paid by Indemnitors to Company on demand. **In the event of payments by the Company, an affidavit signed by an officer of Company, shall be *prima facie* evidence of the amount paid, propriety thereof, and of the Indemnitors' liability therefor to the Company**.

(Emphasis added).

11. With respect to the Indemnitors' duty to deposit collateral with SureTec upon demand in an amount equal to any reserve set by SureTec as soon as liability is asserted against SureTec, Paragraph 3 of the Indemnity Agreement states:

> **Payment of loss or deposit of cash, cash collateral, or other collateral security acceptable to the Company shall be made to the Company by the Indemnitors as soon as liability exists or is asserted against the Company, whether or not the Company shall have made any payment or established any reserve therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by the Company, or (b) such amount as the Company, in its solo judgment, shall deem sufficient to protect it from loss**. The Company shall have

1142426                                                      3
Case 3:16-cv-00592-TRM-HBG   Document 1   Filed 10/03/16   Page 3 of 20   PageID #: 3

the right to use the collateral, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors would be obligated to indemnify the payment or settlement of any liability, loss, or expense for which the Indemnitors would be obligated to indemnify the Company under the terms of this Agreement. If for any reason the Company shall deem it necessary to increase a reserve to cover any possible liability or loss, the Indemnitors will deposit with the Company, immediately upon demand, a sum of money equal to any increase thereof as collateral to the Company for such liability or loss. **The Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest the requirements to provide collateral under this Agreement (such requirements, individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Company will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Company is entitled to specific performance of the Collateral Requirement.** The Company's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Company's sole discretion. Indemnitors further agree that this Collateral Requirement shall not limit or be deemed a waiver of the Company's other rights, which it may exercise in its sole discretion, under this Agreement or otherwise to cancel Bond(s), to demand collateral, or to take any other actions the Company deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Losses under any and all bonds. The exercise of such additional rights shall not be contingent upon the Company's enforcement of this provision.

(Emphasis added).

12. With respect to SureTec's right to settle, compromise, prosecute, or defend any claim against any of SureTec's bonds, Paragraph 5 of the Indemnity Agreement states:

The Company shall have the right to settle, compromise, prosecute, or defend any claim or action brought against the Company or any Indemnitor upon or relating to any bond or any affirmative claims by any Indemnitor against Company or a third party relating to any bonds or any interests granted herein. Company's decision with respect thereto shall be binding and conclusive upon the Indemnitors.

13. With respect to the Indemnitors' duty to provide SureTec with free access to their books and records, Paragraph 6 of the Indemnity Agreement states:

The Company, and its designated agents, consultants, and representatives, shall at any and all reasonable times, have free access to the books and records of the Indemnitors. Indemnitors consent to Company's requests for, and use of, consumer credit reports and investigative consumer credit reports with respect to any of the Individual Indemnitors. Any bank, depository, creditor, credit bureau or credit

reporting agency, obligee of a bond, subcontractor, material supplier, claimant, prior surety, agent, or other person, firm or corporation possessing records or having information concerning the financial affairs and records or having information concerning the current or past financial affairs and operations of the Indemnitors is hereby authorized to furnish to the Company and its representatives, consultants, collection agencies, attorneys, and affiliates, any such records or information requested by the Company. Indemnitors will execute, as requested by the Company, any additional documents necessary to cause the release and production of records and information authorized in this paragraph. Indemnitors acknowledge that the Company may share copies of any and all financial statements, applications, statements, agreements, and any information, including personal and investigative credit reports, which it now has or may hereafter obtain concerning Indemnitors with affiliates, co-sureties, fronting companies, reinsurers, and third party administrators.

14. With respect to the assignment of various of the Indemnitors' rights to SureTec, Paragraph 7 of the Indemnity Agreement states:

> In the event the Indemnitors, or any of them, shall (a) fail to pay any premium or underwriting charge or fee when due, or (b) fail to pay any amounts due hereunder or provide any collateral required to be posted hereunder, (c) abandon, forfeit or breach a bonded contract or obligation, or have been alleged to have abandoned, forfeited, or breached any such contract (d) breach or be declared to have breached any bond, (e) have proceedings instituted against them, or any them, alleging that they are insolvent, or for the appointment of a receiver or trustee for the benefit of creditors, whether such indemnitor(s) are insolvent or not, (f) have proceedings instituted against them, or any of them, the effect of which may be to deprive any of them of the use of any part of the equipment, funds, or assets used in connection with the work under bonded contract so as to hinder, delay or impeded the normal satisfactory progress of the work, (g) fail to cooperate with Company in the investigation of claims made or threatened to be made against Company, (h) be in breach or default of any funds disbursement, collateral, escrow, or other agreement executed in connection with any bond, or (i) If any Indemnitor is an individual, the Indemnitor's dying absconding, disappearing, incompetency, being convicted of a felony or imprisoned, and if the Indemnitor is any other entity, and change or threat of change in the character, identity, control, management, beneficial ownership or existence of Indemnitor, or (j) the Company shall become insecure or unsure of the indemnitors' willingness or ability to perform their obligations hereunder, and irrespective of whether Indemnitors have been declared in default under any bond or undertaking, the Company shall have the right, but not the obligation, to: (x) take possession of the work and under any other contract in connection with which the Company has given its bond or bonds within the purview of this Agreement and, at the expense of the Indemnitors, to continue performance of the contract(s) or cause, consent to, or arrange for, the completion thereof, (y) direct the obligees under such bonds to hold or forward contract proceeds and retainages due, earned, or to become

due or earned, under the contract to the Company or its designees for disbursement or offset against other obligations to Indemnitors to Company as it deems necessary or advisable, and/or (z) take such other and further action as the Company may, in its sole discretion, deem advisable, prudent, or necessary.

15. With respect to the Indemnitors' liability to SureTec for interest on amounts owed, Paragraph 8 of the Indemnity Agreement states:

> Indemnitors shall pay interest on, and interest shall accrue on, all unpaid indebtedness of Indemnitors to Company at an interest rate equal to the lesser of (a) ten percent (10%) per annum or (b) the Highest Lawful Rate (as such term is defined below). Interest on unpaid premiums shall not begin to accrue, however, until 45 days following the date of execution of a bond, or the removal of a bond, by Company or its attorney-in-fact. Notwithstanding any other provision herein, the aggregate interest rate charged under this Agreement, including all charges, fees, or other payments in connection herewith or therewith deemed in the nature of interest under applicable law shall not exceed the Highest Lawful Rate. It is the intention of Company and Indemnitors to conform strictly to any applicable usury laws. Accordingly, if Company contracts for, charges, or receives any consideration which constitutes interest in excess of the Highest Lawful Rate, then any such excess shall be canceled automatically and, if previously paid, shall at Company's option, be applied to the outstanding principal balance due hereunder or be refunded to Indemnitors. As used in this paragraph, the term "Highest Lawful Rate" means the maximum lawful interest rate, if any, that at any time or from time to time may be contracted for, charged, or received under the laws applicable to Company which are presently in effect or, to the extent allowed by law, under such applicable laws which may hereafter be in effect and which allow a higher maximum nonusurious interest rate than applicable laws now allow.

16. With respect to additional security for the Indemnitors' obligations to SureTec under the Indemnity Agreement, Paragraph 9 of the Indemnity Agreement states:

> **As further security, the Indemnitors hereby grant to the Company a security interest in, and lien on, all of their furniture, fixtures, equipment, office equipment, books and records, documents, accounts, deposit accounts, investment property, security accounts and security entitlements, accounts receivable, chattel paper, instruments, letter of credit rights, contract rights and contract proceeds, machinery, plant, inventory, insurance policies, vehicles, tools, real property, general intangibles, materials, rights due or to become due in connection with any contract, whether or not bonded by Company, and all substitutions, replacements, accessions, attachments and improvements to any of the foregoing, along with all insurance and other proceeds from any of the foregoing**. This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of the Company. **In**

**accordance with the Uniform Commercial Code and all similar statutes and a deed of trust or mortgage, as applicable, and may be filled by the Company without notice to perfect the security interests and liens granted herein**. The Company may add schedules, property descriptions, and other documents in this Agreement, and may sign on behalf of Indemnitors where required for filing as a Financing Statement or to otherwise perfect any interest granted herein. For the purpose of recording this Agreement, a photocopy of this Agreement acknowledged by a representative of Company before a Notary Public as begin a true copy hereof shall be regarded as an original. **The grant of the security interest and lien position, and any efforts to perfect same, are in addition to, and not in abrogation of, substitution for, nor restriction of any and all rights which the Company has or may have under this Agreement, at law, or in equity**.

(Emphasis added).

17. With respect to the Indemnitors' designation of SureTec as their limited attorney-in-fact, Paragraph 10 of the Indemnity Agreement states:

The Indemnitors hereby irrevocably nominate, constitute, appoint, and designate, the Company, and its designees, as their attorney-in-fact with the right, power, and authority, but not the obligation, to exercise all of the rights and powers of the Indemnitors assigned, transferred, an set over to the Company in this Agreement, and in the name of the Indemnitors, or any one or more of them, to make, endorse, execute, sign, fill in blanks, and deliver, any and all additional or other instruments and writings, including, but not limited to, assignments, financing statements, documents, documents of conveyance, instruments, checks, drafts, deposit, ACH, and wire transfer directives and orders, change of address and account notices, liens and releases thereof, applications, certificates, draw requests, orders, releases, and papers deemed necessary or desirable by the Company, and to collect the proceeds thereof, in order to give full effect, not only to the intent and meaning of the obligations assumed, and the agreements made, by Indemnitors hereunder, and the assignments and conveyances made herein, but also the full protection intended to be herein given to the Company under all other provisions of this Agreement. The Indemnitors hereby ratify and confirm all acts and actions taken and done by the Company and its designees as such attorney-in-fact. The powers and authority granted herein shall not be affected by the disability or incapacity of the Indemnitors or any one or more of them.

18. With respect to the Indemnitors' acknowledgment of their obligation to keep themselves and SureTec fully informed as to the business activities and financial affairs of the

Indemnitors and their waiver of any right that may otherwise exist to receive notice of events/conditions from SureTec, Paragraph 11 of the Indemnity Agreement states:

> The Indemnitors understand and agree that the circumstances, financial or otherwise, of any one or more of the Indemnitors may change over the period of this agreement and the Indemnitors therefore agree to keep themselves and the Company fully informed as to the business activities and financial affairs of any one or more if the Indemnitors and of the risks being engage in so that the Indemnitors are always aware of the risks of hazards in continuing to act as Indemnitors. **The Indemnitors hereby expressly waive any requirement for notice from the Company of any fact or information coming to the notice or knowledge of the Company affecting its rights or the rights or liabilities of the Indemnitors**. Indemnitors agree not to change or convert its respective individual, corporate or partnership status to either an LLC or an LLP or any other similar structure which has the effect of limiting, reducing, or shielding the liability of the entity or its partners and/or officers hereunder, without the prior, express, written consent of Company. Should any Indemnitors so change its respective corporate or partnership status without the prior, express, written consent of Company, Indemnitors agree that such change in its status shall not limit, reduce, or otherwise shield its obligations, its partners' and/or officers' obligations, to Company which arise from this Agreement. Indemnitors hereby expressly waive as against Company any and all defenses which may arise from such a conversion to a LLC, LLP, or similar status.

(Emphasis added).

19.     With respect to SureTec's right to reach separate settlements of its potential claims against the Indemnitors, Paragraph 12 of the Indemnity Agreement states:

> In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of its parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle or compromise with any one or more of the Indemnitors individually, and without reference or notice to the others, and such settlement or composition shall not affect the liability of any of the others and the Indemnitors hereby expressly waive the right to be discharged by reason of the release of one or more of the Indemnitors, and hereby consent to any settlement or compromise that may hereafter be made.

20.     With respect to the sole mechanism for the termination of the Indemnitors' obligations to SureTec, Paragraph 18 of the Indemnity Agreement states:

> This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, only upon written notice, of not less than thirty (30) days,

sent by registered mail to the home office of the Company, 1330 Post Oak Blvd., Suite 1100, Houston, Harris County, Texas, 77058. In no event, however shall any such termination notice, with respect to, upon or by reason of any and all such bonds executed prior to a date thirty (30) days after the date of the Company's actual receipt of such notice in its home office as aforesaid. Any such termination notice shall not operate to modify, bar, discharge, limit, affect or impair the liability of non-terminating indemnitors, with respect to, upon or by reason of any and all bonds issued by Company.

21. With respect to the scope and duration of the Indemnitors' obligations to SureTec, Paragraph 19 of the Indemnity Agreement states:

> The Indemnitors understand and agree that this document is a continuing agreement to indemnify over an indefinite period and that bonds issued by the Company may vary widely in amounts and nature and that the Indemnitors will be bound by all such bonds, and any changes in the amounts of such bonds or underlying obligations, whether or not Company consents to such changes. The Indemnitors shall continue to remain bound under the terms of the Agreement even though the Company may from time to time, heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accept or release other agreements of indemnity, collateral, or conditions in connection with the procurement of bonds, from Indemnitors or others, **It being expressly understood and agreed by the Indemnitors that any and all other rights which the Company may have or acquire against the Indemnitors or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded Company under this Agreement**.

(Emphasis added).

22. With respect to the parties' designation of Texas law as the law governing the interpretation and enforcement of the Indemnity Agreement, Paragraph 20 of the Indemnity Agreement states:

> This General Agreement of Indemnity is governed by, and shall be interpreted in accordance with the laws of the State of Texas without giving effect to any law or rule that would cause the laws of any jurisdiction other than the State of Texas to be applied. All of Indemnitors' duties and obligations under this Agreement are due, payable, and performable in Houston, Harris County, Texas. Company shall be entitled to enforce this Agreement by an action brought in any locale where Company maintains an office, where Indemnitors may reside or maintain an office, or where any of the bond obligations were to be performed. If any provision or provisions, or portion thereof, of this Agreement shall be void or unenforceable under the laws of any jurisdiction governing its construction, this Agreement shall

not be void or unenforceable under the laws of any jurisdiction governing its construction, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions, or portion thereof, were omitted and the other provisions shall remain in full force and effect.

23. With respect to the applicability of the Indemnity Agreement to all bonds SureTec issues on behalf of the Indemnitors, Paragraph 21 of the Indemnity Agreement states:

> This General Agreement of Indemnity applies to all bonds hereto for or hereafter written by or at the request of Indemnitor, or any of them, and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, proprietorships, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the undersigned Indemnitors, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions, proprietorships, or affiliates, have any interest or participation whether open or silent, jointly, severally, or in any combination with each other, now in existence or which may hereafter be created or acquired by Indemnitors or any of them.

24. With respect to the Indemnitors' waiver of any otherwise applicable homestead exemption, Paragraph 23 of the Indemnity Agreement states:

> Except where prohibited by law, Indemnitors hereby waive all right to claim any property, including homestead, as exempt from levy, execution, sale or other legal process secured or requested by Company under the laws of the United States or of any state or province or of any other government.

25. With respect to the Indemnitors' agreement to hold all proceeds of bonded contracts in trust for the payment of obligations covered by SureTec's bonds, Paragraph 24 of the Indemnity Agreement states:

> Indemnitors declare that all monies due and to become due under any contract or contracts covered by bonds issued by the Company are trust funds, whether in the possession of the Indemnitors or otherwise, for the benefit of and for payment of all obligations for which the Company would be liable under any of said bonds. Said trust also inures to the benefit of the Company for any liability or loss it may have or sustain under any of said bonds, and this Agreement shall constitute notice of such trust.

26. With respect to confirmation that that no other promises, agreements, or understandings may lessen or modify the Indemnitors' obligations under the Indemnity Agreement, Paragraph 26 of the Indemnity Agreement states:

> THE UNDERSIGNED INDEMNITORS REPRESENT TO THE COMPANY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT CONSISTING OF THIS PAGE, THE PRECEDING PAGES, AND ANY PAGES WHICH FOLLOW, AND THAT THERE ARE NO OTHER PROMISES, AGREEMENTS, OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. THE UNDERSIGNED INDEMNITORS RECOGNIZE THAT THE ABOVE AND FOREGOING AGREEMENTS INCLUDE BROAD RIGHTS IN FAVOR OF COMPANY AND LIMITATIONS ON THE LIABILITY OF COMPANY AND ITS AGENTS FOR CERTAIN ACTS AN OMISSIONS, INCLUDING NEGLIGENT ACTS AND OMISSIONS, THE EFFECTIVE DATE OF THIS AGREEMENT OF INDEMNITY SHALL BE THE DAY AND YEAR FIRST ABOVE WRITTEN, REGARDLESS OF THE DATE OR DATES ON WHICH THE UNDERSIGNED MAY EXECUTE THIS AGREEMENT AND REGARDLESS OF WHETHER BONDS WERE ISSUED BY THE COMPANY BEFORE OR AFTER THE EXECUTION OR EFFECTIVE DATE OF THIS AGREEMENT. THE COMPANY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND OR UNDERTAKING FOR INDEMNITORS OR ANY OF THEM.

**The Bonds, SureTec's Exposure to Liability/Loss Thereunder, and the Indemnitors' Failure to Collateralize/Indemnify SureTec**

27. In reliance upon the execution of the Indemnity Agreement by the Indemnitors and others, SureTec issued Subcontract Performance Bond No. 4400284 (the "Performance Bond") attached hereto as **Exhibit 2** and Subcontract Labor & Material Bond No. 4400284 (the "Payment Bond") attached hereto as **Exhibit 3** on behalf of Rutledge.

28. The Performance Bond and the Payment Bond (collectively, the "Bonds") relate to a subcontract (the "Bonded Subcontract") between Rutledge and Hoar Construction, LLC ("Hoar Construction") on a construction project in Jacksonville, Florida, which is commonly referred to as the Jacksonville New Commissary (the "Project").

29. Rutledge ultimately advised SureTec that Rutledge was experiencing financial difficulties including, but not limited to, Rutledge's inability to pay its subcontractors and suppliers for labor, material, equipment, etc. they furnished to Rutledge in relation to the Bonded Subcontract, for which SureTec might face exposure under the Payment Bond.

30. Hoar Construction also advised SureTec that Rutledge was utilizing insufficient manpower under the Bonded Subcontract and threatened to supplement Rutledge's forces under the Bonded Subcontract.

31. Hoar Construction also advised SureTec that Rutledge had failed to pay a number of its subcontractors/suppliers under the Bonded Subcontract.

32. SureTec thereafter began investigating its potential exposure to liability and loss under the Bonds including, but not limited to, the retention of consultants to assess the status and progress of Rutledge's work under the Bonded Subcontract, visiting the site of the Project, and meeting with representatives of Rutledge and Hoar Construction.

33. Based upon its initial investigation of its potential exposure to liability and loss under the Bonds, SureTec, among other things, demanded that the Indemnitors deposit $750,000 in collateral with SureTec or, in the alternative, to furnish collateral consisting of the first position liens on real property valued at $1,125,000 via letter dated July 8, 2016, a copy of which is attached hereto as **Exhibit 4**.

34. The Indemnitors did not deposit any cash or other collateral with SureTec in response to the July 8, 2016 letter attached hereto as **Exhibit 4**.

35. As reflected by the July 12, 2016 letter from Hoar Construction to Rutledge attached hereto as **Exhibit 5**, which is entitled "FORTY-EIGHT (48) HOUR NOTICE TO CURE," Hoar Construction (a) asserted that Rutledge was "in breach of certain obligations under

1142426
12
Case 3:16-cv-00592-TRM-HBG   Document 1   Filed 10/03/16   Page 12 of 20   PageID #: 12

[the Bonded Subcontract]," (b) specifically identified a number of alleged breaches of the Bonded Subcontract, (c) stated that "all breaches must be cured within forty-eight (48) hours of this notice," (d) threatened Rutledge with default under the Bonded Subcontract, and (e) reserved its rights against SureTec under the Bonds.

36. Hoar Construction contends that Rutledge failed to cure the alleged breaches of the Bonded Subcontract referenced in Hoar Construction's July 12, 2016 letter and that Rutledge failed to provide any substantive response setting forth how it planned to cure those alleged breaches.

37. As reflected by the July 14, 2016 letter attached hereto as **Exhibit 6**, which is entitled "NOTICE OF DEFAULT," Hoar Construction (a) purported to provide Rutledge and SureTec "with formal notice that [Rutledge] is in default of its Subcontract obligations" and (b) reserved its rights against SureTec under the Bonds.

38. Rutledge subsequently abandoned the work encompassed by the Bonded Subcontract, which exposed SureTec to liability/losses under the Bonds.

39. Following Rutledge's abandonment of the work encompassed by the Bonded Subcontract, Hoar Construction has asserted a claim against SureTec under the Performance Bond and a number of Rutledge's subcontractor/suppliers have asserted and/or may assert claims against SureTec under the Payment Bond.

40. As a result of SureTec's investigation of its potential liability and loss under the Bonds, which investigation remains ongoing and has included the retention of outside consultants and attorneys, analysis of records relating to the Bonded Subcontract, and the solicitation of pricing for the completion of the remaining work encompassed by the Bonded Subcontract, SureTec has established a reserve in the amount of $4,775,000.

41. As of September 28, 2016, SureTec had made a payment to Hoar in the amount of $504,364.11 in partial satisfaction of Hoar's claims under the Performance Bond, and additionally, SureTec had made the following payments to Rutledge's subcontractor/suppliers for labor, material, equipment, etc. they furnished to Rutledge under the Bonded Subcontract:

| Payee | Amount |
|---|---|
| World Electric Supply | $218,757.66 |
| BetterStaf, Inc. | $209,164.04 |
| Heart Utilities of Jacksonville, Inc. | $36,605.13 |
| Terence Whitfield | $632.10 |
| Life Safety Designs, Inc. | $83,914.45 |
| J.S. Held, LLC | $18,064.67 |
| Miller Electric | $14,015.00 |
| Harlan Electric/White Electric | $3,914.23 |
| Bernie's Tool & Fastening Services, Inc. | $1,088.85 |
| **Total** | **$586,156.13** |

42. As of September 28, 2016, SureTec had received and faced exposure to liability and loss in relation to the following claims (in addition to anticipated claims against the Payment Bond and Hoar Construction's claim against the Performance Bond):

| Claimant | Amount |
|---|---|
| BetterStaf, Inc. | $78,593.62 |
| Cummins Crosspoint | $120,335.00 |
| Mayer Electric Supply | $429,104.72 |
| Gear, LLC | $51,444.85 |
| Neff Rental, Inc. – Orlando | $40,987.22 |
| **Total** | **$720,465.41** |

43. Accordingly, by letter dated September 27, 2016 (but actually transmitted on September 28, 2016), a copy of which is attached hereto as **Exhibit 7**, SureTec, among other things, demanded that the Indemnitors indemnify and collateralize SureTec by tendering payment of $4,775,000 to SureTec, which demanded amount equals SureTec's reserve.

44. To date, however, the Indemnitors have not deposited any amount with SureTec in response to SureTec's demand and have otherwise breached their joint and several obligation to indemnify and collateralize SureTec from liability and loss relative to the Bonds.

## IV. CLAIMS FOR RELIEF

### COUNT I – Specific Performance of the Indemnity Agreement (Deposit of Collateral)

45. SureTec incorporates the foregoing allegations as if fully set forth verbatim herein.

46. Under Paragraph 3 of the Indemnity Agreement, payment of loss or deposit of cash, cash collateral, or other collateral security acceptable to SureTec shall be made to SureTec by the Indemnitors as soon as liability exists or is asserted against SureTec, whether or not the Company shall have made any payment or established any reserve therefor.

47. Under Paragraph 3 of the Indemnity Agreement, the Indemnitors' deposit of cash collateral with SureTec shall be equal to the larger of (a) the amount of any reserve set by SureTec or (b) such amount as SureTec, in its solo judgment, shall deem sufficient to protect it from loss.

48. Under Paragraph 3 of the Indemnity Agreement, the Indemnitors waived each and every right that they may have otherwise possessed to contest their obligation to provide collateral to SureTec under the Indemnity Agreement.

49. Under Paragraph 3 of the Indemnity Agreement, the Indemnitors stipulated and agreed that SureTec will not have an adequate remedy at law should the Indemnitors fail to perform their collateral obligations under the Indemnity Agreement.

50. Under Paragraph 3 of the Indemnity Agreement, the Indemnitors also stipulated and agreed that SureTec is entitled to specific performance of the Indemnitors' collateral obligations under the Indemnity Agreement.

51. Under Texas law, which governs the interpretation/enforcement of the Indemnity Agreement, the Indemnity Agreement is fully enforceable and every provision of the Indemnity Agreement must be enforced pursuant to its unambiguous terms.

52. Specific performance is an available remedy for breach of contract under Texas law when the non-breaching party lacks an adequate remedy at law.

53. As a result of SureTec's investigation of its potential liability and loss under the Bonds, which investigation remains ongoing and has included the retention of outside consultants and attorneys, analysis of records relating to the Bonded Subcontract, and the solicitation of pricing for the completion of the remaining work encompassed by the Bonded Subcontract, SureTec has established a reserve in the amount of $4,775,000

54. As reflected by **Exhibit 7**, SureTec has demanded in writing that the Indemnitors deposit collateral with SureTec totaling $4,775,000 as required by Paragraph 3 of the Indemnity Agreement.

55. However, the Indemnitors have not deposited any collateral with SureTec.

56. The Indemnitors' failure to deposit collateral with SureTec constitutes a material breach of the Indemnity Agreement.

57. As the Indemnitors stipulated and agreed under Paragraph 3 of the Indemnity Agreement, SureTec lacks an adequate remedy at law in relation to the Indemnitors' material breach of the Indemnity Agreement by failing to deposit the demanded collateral with SureTec.

58. Moreover, the Indemnitors' material breach of the Indemnity Agreement by failing to deposit the demanded collateral with SureTec has immediately and irreparably harmed SureTec.

59. Specifically enforcing the Indemnitors' collateral obligations will further a number of public interests including, but not limited to, strengthening the sanctity of unambiguous

contracts, fostering confidence in the surety industry, and ensuring the solvency of sureties such as SureTec.

60. SureTec is therefore entitled to the entry of an injunction/judgment jointly and severally compelling the Indemnitors to deposit collateral with SureTec totaling $4,775,000 as required by Paragraph 3 of the Indemnity Agreement.

## COUNT II – Breach of the Indemnity Agreement (Damages)

61. SureTec incorporates the foregoing allegations as if fully set forth verbatim herein.

62. Under Paragraph 2 of the Indemnity Agreement, the Indemnitors must indemnify and save SureTec harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which SureTec may pay, suffer, or incur in consequence of having executed the Bonds on behalf of Rutledge including, but not limited to, court costs, collection fees, mediation and facilitation fees and expenses, funds disbursement and escrow fees, fees and expenses of attorneys, accountants, adjusters, third party administrators, inspectors, experts, and consultants, whether on salary, employed by affiliates, third party administrators, or co-sureties, on retainer, in-house, or otherwise, and the expense of determining liability, or procuring, or attempting to procure, release from liability, or in bringing suit or claim to enforce the obligation of any of the Indemnitors under the Indemnity Agreement.

63. SureTec has suffered and/or incurred and continues to suffer/incur claims, demands, liabilities, costs, losses, etc. in consequence of having executed the Bonds on behalf of Rutledge, which claims, demands, liabilities, costs, losses, etc. currently exceed $1,090,520.24.

64. Despite SureTec's demand, the Indemnitors have failed to save SureTec harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine,

penalty, and expense which SureTec may pay, suffer, or incur in consequence of having executed the Bonds on behalf of Rutledge.

65. SureTec has been damaged by the Indemnitors' failure to save SureTec harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which SureTec may pay, suffer, or incur in consequence of having executed the Bonds on behalf of Rutledge in an amount that currently exceeds $1,090,520.2424.

66. SureTec is therefore entitled to the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully save SureTec harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which SureTec may pay, suffer, or incur in consequence of having executed the Bonds on behalf of Rutledge, the amount of which currently exceeds $1,090,520.24 and will be proven at trial.

## COUNT III – Equitable Indemnity, Reimbursement and Exoneration Against Rutledge

67. SureTec incorporates the foregoing allegations as if fully set forth verbatim herein.

68. Pursuant to a common law right of exoneration, indemnification, and reimbursement, SureTec is entitled to exoneration, indemnification, and/or reimbursement from Rutledge, as the principal on the Bonds, for all loss suffered by SureTec, as surety, by reason of having issued the Bonds on behalf of Rutledge.

69. Therefore, Rutledge is liable to SureTec for all losses suffered and anticipated to be suffered by SureTec by reason of having issued the Bonds on behalf of Rutledge, which amount currently exceeds $1,090,520.24 and will be proven at trial.

## COUNT IV – *Quia Timet*

70. SureTec incorporates the foregoing allegations as if fully set forth verbatim herein.

1142426                                               18
Case 3:16-cv-00592-TRM-HBG   Document 1   Filed 10/03/16   Page 18 of 20   PageID #: 18

71. Pursuant to its equitable remedy of *quia timet*, SureTec is entitled to be provided money and/or property by Rutledge sufficient to exonerate SureTec, as surety, from and against any loss that has resulted to SureTec by reason of having executed the Bonds, which amount currently exceeds $1,090,520.24 and will be proven at trial.

WHEREFORE, PREMISES CONSIDERED, SureTec prays for the following relief:

a) For the issuance of process requiring each of the Indemnitors to answer SureTec's Complaint for Indemnity and Other Relief;

b) For the entry of an injunction/judgment jointly and severally compelling the Indemnitors to deposit collateral with SureTec totaling $4,775,000 as required by Paragraph 3 of the Indemnity Agreement (though SureTec expressly reserves the right to demand additional collateral in the future);

c) For the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully save SureTec harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which SureTec may pay, suffer, or incur in consequence of having executed the Bonds on behalf of Rutledge, the amount of which currently exceeds $1,090,520.24 and will be proven at trial;

d) For the entry of judgment against Rutledge for all losses suffered and anticipated to be suffered by SureTec by reason of having issued the Bonds on behalf of Rutledge, which amount currently exceeds $1,090,520.24 and will be proven at trial;

e) For the entry of judgment against Rutledge for money and/or property sufficient to exonerate SureTec, as surety, from and against any loss that has resulted to SureTec by reason of having executed the Bonds, which amount currently exceeds $1,090,520.24 and will be proven at trial; and

f) For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

   /s/ Jarrod W. Stone
Jarrod W. Stone     BPR No. 023915
Scott Williams       BPR No. 021757
MANIER & HEROD
One Nashville Place, Suite 2200
150 Fourth Avenue North
Nashville, Tennessee 37219
Phone: (615) 244-0030
Fax: (615) 242-4203
jstone@manierherod.com
swilliams@manierherod.com
Attorneys for SureTec Insurance Company